UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-81191-CIV-RYSKAMP

SHAWNTA DENT,

      Plaintiff,

v.

JOSEPH A. GIAIMO, D.O., P.A.,

      Defendant.

_____/

**DEFENDANTS' VERIFIED MOTION FOR ATTORNEY'S FEES AGAINST FINDLER
& FINDLER, P.A., LISSA MARIE-THERESE JOLIVERT-DORSEY, ESQ., AND
PLAINTIFF, WITH INCORPORATED MEMORANDUM OF LAW**

Defendant, Joseph A. Giaimo, D.O., P.A., a Florida professional association ("Giaimo"),

by and through its undersigned counsel, pursuant to Local Rule 7.3, 28 U.S.C. § 1927, the

Court's inherent power to control the litigation that comes before it, moves this Court for entry

of an order awarding attorney's fees and costs against Findler & Findler, P.A., Lissa Marie-

Therese Jolivert-Dorsey, Esq., and Plaintiff,[1] and in support states:

**<u>BACKGROUND</u>**

The Plaintiff filed a Complaint alleging violations of the Fair Labor Standards Act (29

U.S.C. § 201 *et seq.*) for alleged overtime violations. The Complaint sets forth one (1)

substantive count pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiff sought back

wages, liquidated damages, prejudgment interest, attorneys' fees, and litigation expenses. (*See

generally, Complaint*). Giaimo is a local pulmonary physician who has one office in a strip

center in North Palm Beach, Florida, and who practices medicine only in the State of Florida

locally.  His office is small, as he works there and has a couple of employees to help with the patients, to answer the phone, maintain records and files, and send out billing.  It is painfully obvious to everyone who has ever worked for Giaimo that he is a local doctor who could not possibly be engaged in interstate commerce, a prerequisite for filing a lawsuit under the FLSA. (*See Giaimo's Affidavit*, submitted in support of the Motion for Summary Judgment).  Yet, unfortunately, Plaintiff filed this ill-advised suit, looking to "stick-up" yet another local business.

Section 207(a) of the FLSA provides, in relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Simply put, the FLSA requires an employer to pay overtime at a rate of one and one-half the employee's regular rate for all time worked over 40 hours in a week. These FLSA overtime provisions apply in two circumstances:  (1) where an employee is engaged in commerce or the production of goods for commerce—individual coverage; or (2) where an employee works for an enterprise engaged in commerce or in the production of goods for commerce—enterprise coverage.  *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003).  "The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce." *Kitchings v. Florida United Methodist Children's Home, Inc.*, 393 F.Supp.2d 1282, 1292 n.25 (M.D. Fla. 2005) (citing *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 121 (1946) and *Warren-Bradshaw Drilling Co. v. Hall*, 317 U.S. 88, 90 (1942)).

---

[1] Defendant does not request that a hearing be held on this Motion.  This Motion only covers up to April 17, 2009, because that is the date that this motion is filed.  Defendant intends to file supplemental motions

Under the first type of FLSA coverage—"individual coverage"—an employee is entitled to time-and-a-half overtime pay as long as he or she is "engaged in commerce or in the production of goods for commerce." *See* 29 U.S.C. § 207.  To determine whether an employee performed such work, a court must focus its inquiry on the activities of the employee. *See Mitchell v. Lublin McGaughy & Assocs.,* 358 U.S. 207, 211 (1959); *see also Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1267-68 (11th Cir. 2006). In *Thorne*, the Eleventh Circuit held that it was "the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting commerce", and thus an employee must be "engaged in commerce", which means he must be "directly participating in the actual movement of persons or things in interstate commerce". *Thorne*, 448 F.3d at 1266.  Further, in addition to the requirement that the individual must be directly participating in the actual movement of persons or things in interstate commerce, "[f]or an employee to be engaged in commerce, 'a substantial part of the employee's work must be related to interstate commerce." *Kitchings*, 393 F. Supp.2d at 1293 n.26 (quoting *Boekemeier v. Fourth Universalist Soc'y in City of New York,* 86 F. Supp.2d 280, 287 (S.D. N.Y. 2000) and (citing *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 572 (1943)).

Under the second type of FLSA coverage—"enterprise coverage"—an employee is entitled to time-and-a-half overtime pay if he or she is employed by "an enterprise engaged in commerce," as defined by § 203(s) of the statute.  An enterprise engaged in commerce had been held to be a company that has gross annual revenue that exceeds $500,000 and has two or more employees—one of whom does not have to be the plaintiff—who are entitled to invoke individual coverage, that is, they regularly and recurrently directly participate in the actual movement of goods and services across state lines. *Vallecillo v. Wall to Wall Residence Repairs,*

---

for attorneys' fees at appropriate times in the case as further work necessitates.

*Inc.*, 595 F. Supp. 2d 1374 (S.D. Fla. 2009) (noting that "[i]n determining 'what constitutes engaged in commerce for enterprise coverage, courts may look to the definitions used in individual coverage cases") (quoting *Lamonica v. Safe Hurricane Shutters, Inc.*, 578 F. Supp. 2d 1363, 1366 (S.D. Fla. 2008) (holding same) (citing *Scott v. K.W. Max Investments, Inc.*, 256 Fed. Appx. 244, 248 (11ᵗʰ Cir. 2007) (citing *Thorne*, 448 F.3d at 1265-66)).

On May 9, 2006, the Eleventh Circuit decided the case *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264 (11ᵗʰ Cir. 2006). As set forth above, *Thorne* sets forth a difficult hurdle for a plaintiff to prove coverage, because the plaintiff must show that he (or two other employees) regularly and recurrently "directly participat[ed] in the actual movement of persons or things in interstate commerce". *Id.* at 1266. *Thorne* held that an employee's purchase of goods from a local retailer or wholesaler that had previously been transported across state lines is irrelevant, because it determined that, "[w]hen goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further *intrastate* movement of the goods are not covered under the [FLSA]". *Id.* at 1267 (emphasis in original).

On October 15, 2008, Plaintiff, rather than first filing a pure bill of discovery to determine whether she could prove coverage under the FLSA,[2] filed the instant lawsuit, alleging that the corporate Defendant's gross annual revenue exceeded $500,000, and that she could prove coverage—that is, that two or more employees were regularly and recurrently handling goods or materials that had moved in commerce (when it is obvious applying the *Thorne*

---

[2] Unfortunately, the Plaintiffs' bar has implemented a file-suit-first-and-ask-questions-later policy concerning bringing suits under the FLSA. This is because they know that the cost of defending cases in federal court is so great, almost all employers will simply pay nuisance value to settle rather than fight these suits. It is way past time for a Court to properly address such improper tactics. Literally no plaintiff's lawyer practicing in this area is filing a bill of discovery to ensure jurisdiction exists before filing suit. *See, e.g., Casseus v. First Eagle, L.L.C.*, 2008 WL 1782363 (S.D. Fla. 2008); *Delisle v. LGY Corp.*, 2008 WL 1821518 (S.D. Fla. 2008); *Dorvilus v. Best Deli of Tamarac, Inc.*, Case No. 08-60268-

standard that individual coverage was not applicable). (*See generally, Complaint*). Naturally, Giaimo responded to the Complaint by filing a Motion to Dismiss for Lack of Subject Matter Jurisdiction, or Alternatively, for Summary Judgment [D.E. 5], which pointed out how this case was frivolous, which this Court later converted into a motion for summary judgment.

The Plaintiff then multiplied the proceedings by filing a Motion to Stay Briefing on Defendant's Motion for Summary Judgment, and sought to greatly expand discovery and hence the expenditure of attorneys fees in this case, which is a favorite tactic of plaintiff's lawyers to pull in these FLSA cases to ratchet up the pressure on an employer to settle. *See, e.g., Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338 (S.D. Fla. 2009). Plaintiff's ill-advised Motion caused Giaimo to have to respond to it, and incur unnecessary attorney's fees. The Court, then, seeing where this case was heading, sagaciously issued Plaintiff an Order to Show Cause [D.E. 9], which required her to "file an affidavit providing facts to support her contention that defendant does not have more than two employees engaged in interstate commerce." The Court allowed the Plaintiff to engage in limited jurisdictional discovery, but wanted to see the affidavit first. Plaintiff never sought to engage in discovery in the case, and never sought to have Giaimo stipulate to any specific facts relevant to Giaimo's Motion or Plaintiff's response thereto. The Court went on to warn Plaintiff's counsel that attorney's fees would be assessed against her if the Court later determined that the lawsuit was frivolous, as follows: "Plaintiff's counsel is cautioned that if, after the conclusion of the limited discovery period, this Court determines that this lawsuit is frivolous under Rule 11, counsel will be personally responsible for any attorney's fees and costs defendants incur in defending this matter." In essence, the Court was being gracious to Plaintiff's counsel, and gave her the following choice:  dismiss the case and get out

_____

CIV-LENARD [D.E. 15, 55].  It is time for lawyers in this industry to understand that there are consequences when a frivolous lawsuit is filed.

now without having to worry about sanctions, or proceed at your own risk.  Rather than pausing and thinking twice about whether Plaintiff's counsel could really prove that Giaimo had an interstate connection sufficient to trigger the limited jurisdiction and scope of the FLSA, she could not resist the temptation of the lucrative FLSA attorney-fee business, and she filed an affidavit from the Plaintiff which was woefully deficient to demonstrate coverage under the FLSA.  [*See* D.E. 11, 45, 14, 10, 16, 19, 20, 37].

The Court should also have serious concerns about Plaintiff's motivation for filing this suit, because she testified under oath at her unemployment hearing (at which benefits were denied) days before filing this instant suit that she did not intend to sue Giaimo.  [D.E. 15].  This shows that Plaintiff was either not truthful in order to attempt to obtain unemployment or she really knew that she did not have a FLSA claim against Giaimo, *i.e.*, she never worked any overtime for which she was not properly compensated or there was no jurisdiction, yet suit was filed.  This cries out for sanctions in the form of an award of attorneys' fees against both the Plaintiff and her counsel.

Plaintiff multiplied the proceedings even further by filing an amicus brief from the Department of Labor in another case.  [D.E. 38].  Giaimo had to move to strike the amicus brief, which the Court did.  The arguments in the amicus brief were without merit (that the addition of the undefined term "or materials" in the 1974 amendments should be construed as changing the defined term "goods" in the statute, and that everything that could be considered "goods" should be considered "materials"), and Judge Gold has recently rejected them, holding that goods are goods and whatever is not goods may be materials. *See Order Granting Defendants' Motion for Judgment Notwithstanding the Verdict*, Case No. 06-22487-CIV-GOLD, attached hereto as Exhibit 1.  Thereafter, the Court set an oral argument date for Giaimo's Motion for Summary

Judgment, and Plaintiff failed to attempt to engage in any discovery or seek stipulation to facts. It was painfully clear at the oral argument that Plaintiff's counsel should have taken the time to research the legal issues in this case fully, before ever filing the affidavit of Plaintiff and proceeding with this case, and should have voluntary dismissed the action after the Court issued the Order to Show Cause.   Thereafter, the Court granted the converted Motion for Summary Judgment, and issued a Final Judgment in Giaimo's favor.  [D.E. 45, 46].

## MEMORANDUM OF LAW

### I.   THE APPLICABLE LEGAL STANDARDS FOR DETERMINING ATTORNEY'S FEE AWARDS

Giaimo seeks an award of attorneys fees against Plaintiff, Plaintiff's counsel and her law firm.

### A.   Recovery of Fees Against Plaintiff's Counsel

The Court may award fees against Plaintiff's counsel pursuant to 28 U.S.C. § 1927.  Title 28 U.S.C. § 1927 states as follows:

> An attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

An attorney multiplies the proceedings unreasonably and vexatiously when that attorney brings an action that is frivolous or when the attorneys knew or should have known that the action was frivolous.  *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003); *Murray v. Playmaker Servs., L.L.C.*, 548 F. Supp. 2d 1378 (S.D. Fla. 2008).  This is precisely what § 1927 is for.  *American Honda Motor Co. v. Motorcycle Information Network*, 2008 WL 906739 (M.D. Fla. 2008); *Torres v. City of Orlando*, 264 F. Supp. 2d 1046, 1053 (M.D. Fla. 2003) (assessing fees and finding that there was bad faith because the plaintiff's lawyer filed and prosecuted

claims that lacked any plausible legal or factual support). An attorney should be charged with objectively assessing whether her client has a claim (or defense) and if a claim is frivolous but prosecuted, as in this case, sanctions should lie, because prosecuting a case that is not "worth prosecuting in the first place" is "unreasonable and vexatious to the judicial process and tantamount to bad faith." *Torres*, 264 F. Supp. 2d at 1055.  In fact, it has been held to be reversible error to fail to award fees, when a frivolous lawsuit has been filed. *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645 (7th Cir. 2001); *Riddle & Assoc. v. Kelly*, 414 F.3d 832 (7th Cir. 2005).

In this case, from the outset, Plaintiff's counsel is charged with having knowledge of *Thorne*, as a practitioner in this area, there is simply know way she did not have knowledge of and understand that case.  Therefore, in simply speaking with his client, Plaintiff's counsel should have known immediately that this is not a case in which coverage existed under the FLSA.  Knowing (from speaking to her client) that Giaimo's business consists of a couple of employees and a doctor with one office deep within peninsular Florida who does not practice medicine outside of the State of Florida should have alerted Plaintiff's counsel not to file this suit.  Accordingly, rather than file suit, Plaintiff's counsel should have filed a pure bill of discovery, which is a device that would allow her to take discovery pre-suit, to first determine whether coverage existed.  Unfortunately, Plaintiff's counsel boldly filed suit, and then continued to litigate that suit when she learned that no jurisdiction existed in the case, as set forth above.

Had Plaintiff's counsel simply discussed the facts of the case with her client, she certainly would have known that this was not a case that should have been filed (either not at all, or at a minimum, the facts required that a bill of discovery be filed first).  The failure to have

such a discussion was reckless, which requires that fees under § 1927 be awarded. *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987). Or, if Plaintiff's counsel did have that discussion with the Plaintiff, then Plaintiff's counsel brought the case and/or continued to litigate it even though she knew that it was devoid of merit. The fact that every step of the way Plaintiff's counsel employed litigation tactics that had the effect of significantly increasing the costs of this litigation, further warrant an award of fees. Accordingly, the Defendants request that the Court award them their attorney fees in this case against Plaintiff's counsel.

## B.   <u>Recovery of Fees Against Plaintiff</u>

In it s clear that attorneys fees are also properly awardable against the Plaintiff herself, if the case was brought in bad faith, or if it is frivolous. *Murray v. Playmaker Servs., L.L.C.*, 548 F. Supp. 2d 1378 (S.D. Fla. 2008). It is clear from the Court's summary judgment ruling that this case was frivolous. Moreover, the Plaintiff's testimony at the unemployment hearing is also telling. It is inexcusable for the Plaintiff to testify that she has no intention of suing Giaimo, and that she did not seek her pay and time records because of the possibility of a lawsuit but rather wanted them for other reasons, but then days later to sue Giaimo. Plaintiff testified in her unemployment hearing that she did not intend to sue Giaimo, and that her recent request for her pay records were not associated with any cause of action that she had against Giaimo, as follows:

> Q:   Okay. Have you then called Doctor Giaimo's office and ordered various documents to be provided to your lawyer with respect to your pay?
>
> A:   Yes. My time cards and the day of my back injury, yes, sir.
>
> Q:   Do you intend to sue Doctor Giaimo?
>
> A:   No. I needed those [the pay records and the day of her back injury] for something else.

(*Unemployment Transcript* at 42-43, attached hereto as Exhibit 2).  This testimony demonstrates that Plaintiff, at least on the date of the hearing, October 8, 2008, had no intention to sue Giaimo for any pay issues.  This tends to show that Plaintiff really did not have any claim for pay issues against Giaimo.  Yet, the suit was brought anyway, and Plaintiff brazenly submitted an affidavit that stated that Giaimo was subject to suit under the FLSA, when he clearly was not.

### 1.   The Eleventh Circuit's Standards for Assessing Attorney's Fees

The Eleventh Circuit's current standards for measuring attorney's fees are set out in *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1298-99 (11th Cir. 1988) (*en banc*), wherein the court surveyed the fee-award jurisprudence of both the Supreme Court and the Eleventh Circuit, and reiterated that a fee award should be based upon a multiplication of a reasonably hourly rate (that is, "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation"), *id.* at 1299, by the number of "reasonable hours" billed, *id.* at 1301, which equals the "lodestar", and this resulting lodestar can be increased or decreased for the results obtained, the quality of representation, and for any delay in payment. *Id.* at 1302.  Put another way:

(reasonable hourly rate) x (reasonable hours billed) = lodestar.

The lodestar can then be adjusted.  The next four subsections discuss:  1) the reasonable hourly rate; 2) assessing the hours billed; 3) the lodestar; and 4) adjusting the lodestar, in turn.

### 1.   Establishing A Reasonable Hourly Rate

The "going rate" in the legal community is the most critical factor in determining a reasonable fee. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990).  The pertinent "legal community" used to base an applicable hourly rate is the city where the plaintiff's attorney has his office, not where the case was tried. *Brooks v. Georgia State Bd. of Elections*, 997

F.2d 857, 868-69 (11th Cir. 1993).    The plaintiff's attorney bears the burden of producing

satisfactory evidence that the requested rate is in line with the going rate. *Norman*, 836 F.2d at

1299.  Satisfactory evidence is more than the affidavit of the plaintiff's attorney, and such evidence

should pertain to rates actually billed and paid in similar suits. *Id.*  "Evidence of rates may be

adduced through direct evidence of charges by lawyers under similar circumstances or by opinion

evidence." *Id.*  The weight to be given to opinion evidence is affected by the detail contained in the

testimony on matters such as similarity of skill, reputation, experience, similarity of case and client,

and breadth of the sample of which the expert has knowledge. *Id.*

    The client is undersigned counsel's client, and undersigned counsel did perform the vast

majority of all work on the file, as 44.6 hours out of 50.4 hours of work sought were done by

undersigned counsel.  Undersigned counsel charges $300.00 per hour, and he charged the client

in this case $300.00 per hour for his services.    Undersigned counsel has been awarded $300.00

per hour in two published opinions, as being his market rate.  *Tesma v. Maddox-Joines, Inc.*,

2009 WL 230158 (S.D. Fla., Jan. 30, 2009); *Josendis v. Wall to Wall Residence Repairs, Inc.*,

2009 WL 454558 (S.D. Fla., Feb. 17, 2009); (*Affidavit of Chris Kleppin*, attached hereto as

Exhibit 3).  Those hourly rates were awarded to undersigned counsel, because he charged those

rates to his clients, and those courts believed that undersigned counsel's reasonable market rate is

$300.00 per hour.  What a lawyer charges his fee-paying clients "is powerful, and perhaps the

best, evidence of his market rate." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th

Cir. 2000); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1336-37 (11th Cir.

2001) (holding that the agreed upon billing rate is a strong indication of a reasonable rate but

affirming the award of an hourly rate that exceeded that agreed upon billing rate because "the

agreed-upon fee rate does not necessarily act as a cap or ceiling in determining the reasonable hourly rate").

Undersigned counsel has concentrated in the area of labor and employment law for the past six (6) years and two months.  Undersigned counsel is admitted to practice law in Florida, Massachusetts, and Washington, D.C., as well as federal courts in Florida (the Northern, Middle, and Southern Districts) and the Eleventh Circuit.   He has tried several FLSA and civil rights cases to verdict, and has been successful in trials in a variety of actions.  In addition to trying cases, undersigned counsel participates in many depositions (both taking and defending), appeals, client interviews, and all other areas of active litigation.  The current hourly rate that he charges private defendants in employment cases is $300.00, and he currently has many cases in which that amount is being charged.  Undersigned counsel has had considerable trial success.  For example, on February 20, 2009, he received a verdict in his defense client's favor in *Exime v. E.W. Ventures, Inc.*, Case No. 08-60099-CIV-SEITZ, on July 2, 2008, he received a jury defense verdict in his favor in *Chiever v. R.J. Schor, Inc.*, Case No. 08-60461-CIV-ZLOCH, on December 18, 2007, a jury verdict in his favor in *Lane v. CAMCO*, Case No. 04-60602-CIV-MARRA, on October 18, 2007, undersigned counsel received a jury verdict in his client's favor in *Harley v. The Health Center of Coconut Creek, Inc.*, Case No. 04-61309-CIV-GOLD, and on April 24, 2006, undersigned counsel received a verdict in his favor in *Maranto v. Jenne*, Case No. 00-15951 (09) (Andrews, J.).

Giaimo also seeks fees for the work performed by Lloyd S. Glasser, Esq. and Harry O. Boreth, Esq., who also seek $300.00 per hour, because that is what the client was charged.  The $300.00 per hour request is far less than what Mr. Glasser and Mr. Boreth typically command, *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341 (S.D. Fla. 2007) (awarding Mr. Boreth and Mr. Glasser $450.00 per hour), but they seek that in this case because they had very

minor roles, and this case was intended to be handled solely by undersigned counsel, and $300.00 is what the client was charged. Mr. Glasser and Mr. Boreth have decades of experience, as Mr. Boreth began his legal career in the mid-1960s and Mr. Glasser the mid-1970s. Mr. Boreth graduated from the University of Pennsylvania's Wharton School of Business and the University of Pennsylvania's law school. Mr. Glasser graduated from the American University and DePaul University Law School. The retainer agreement signed by the client states that the client shall compensate counsel at the rate of $300.00 per hour.

Undersigned counsel currently has approximately 196 published Westlaw opinions in which he was the lead counsel, and many of these are cases published in the federal reporters involving dispositive motions. *See, e.g., Josendis v. Wall to Wall Residence Repairs, Inc.*, -- F. Supp. 2d --, 2009 859246 (S.D. Fla., Mar. 30, 2009) (granting defense clients' motion for summary judgment because of no coverage); *Dent v. Giaimo*, -- F. Supp. 2d --, 2009 WL 762206 (S.D. Fla., Mar. 19, 2009) (granting defense client's motion for summary judgment in FLSA case because no coverage); *Vallecillo v. Wall to Wall Residence Repairs, Inc.*, 595 F. Supp. 2d 1374 (S.D. Fla. 2009); *Auer v. Atlantic & Pacific*, 2009 WL 63063 (S.D. Fla. 2009); *Monelus v. Tocodrian, Inc.*, 598 F. Supp. 2d 1312 (S.D. Fla. 2008); *Milbourn v. Aarmada*, 588 F. Supp. 2d 1341 (S.D. Fla. 2008); *Lamonica v. Safe Hurricane Shutters, Inc.*, 578 F. Supp. 2d 1363 (S.D. Fla. 2008) (granting summary judgment in his client's favor and holding FLSA does not apply to local hurricane shutter installation company, although company's gross annual revenue exceeded $500,000); *Polycarpe v. E & S Landscaping, Inc.*, 572 F. Supp. 2d 1318 (S.D. Fla. 2008) (granting summary judgment for lack of enterprise coverage in a case where his defense client had over $500,000 in annual revenue, because of no individual or enterprise coverage); *Bien-Aime v. Nanak's Landscaping, Inc.*, 572 F. Supp. 2d 1312 (S.D. Fla. 2008) (holding same);

13

*Guzman v. Irmadan, Inc.*, 551 F. Supp. 2d 1368 (S.D. Fla. 2008) (granting summary judgment in FLSA case based on lack of individual coverage), *aff'd*, 2009 WL 792939 (11th Cir., Mar. 27, 2009); *Casseus v. First Eagle, L.L.C.*, 2008 WL 1782363 (S.D. Fla., Apr. 28, 2008) (granting motion for summary judgment in FLSA case because lack of enterprise and individual coverage); *Malin v. Town of Davie*, 2008 WL 2752707 (Broward Cty. Cir. Ct., June 4, 2008) (granting summary judgment in favor of defense client concerning the retaliation, discrimination, and harassment claims brought by two employees under the Florida Civil Rights Act) (Moe, J.); *Delisle v. LGY Corp.*, 2008 WL 1821518 (S.D. Fla., Apr. 16, 2008) (granting summary judgment in FLSA case because lack of enterprise coverage); *Navarro v. Broney Automotive Repairs, Inc.*, 533 F. Supp. 2d 1223 (S.D. Fla. 2008) (granting summary judgment in FLSA case because lack of both individual and enterprise coverage), *aff'd, Navarro v. Broney Automotive Repairs, Inc.*, 2008 WL 2315869 (11th Cir., June 6, 2008), *cert. denied*, -- S.Ct. --, 2008 WL 4144447 (2008); *Murray v. Playmaker Servs., L.L.C.*, 512 F. Supp. 2d 1273 (S.D. Fla. 2007) (granting summary judgment in favor of his defense clients in FLSA case for overtime brought by outside salesperson); *Sweat v. Town of Davie*, 2007 WL 3234638 (Broward Cir. Ct. 2007) (Damoorgian, J.) (granting summary judgment in favor of defense client on retaliation claim under Florida Civil Rights Act—ruling was not appealed); *Powell v. Carey Int'l, Inc.*, 483 F. Supp. 2d 1168 (S.D. Fla. 2007) (granting summary judgment in favor of his plaintiff clients as to motor carrier and taxicab exemptions); *Rossi v. Associated Limousine Serv., Inc.*, 438 F. Supp. 2d 1354 (S.D. Fla. 2006) (granting summary judgment in favor of his plaintiff clients on the motor carrier exemption, taxicab exemption, and independent contractor defense); *Cartun v. Carey Int'l, Inc.*, Case No. 04-21074-CIV-UNGARO-BENAGES (Dec. 10, 2004) (granting summary judgment in favor of his plaintiff client as to motor carrier exemption); *Garcia v. Carey Int'l, Inc.*, Case No. 03-22963-CIV-

UNGARO-BENAGES (Dec. 10, 2004) (granting same); *Lieberman v. Corporate Connection Lines, Inc.*, 2005 WL 5501491, *2 (S.D. Fla. 2005) (holding that the motor carrier exemption does not apply to limousine drivers in South Florida); *Powell v. Carey Int'l, Inc.*, 490 F. Supp. 2d 1202, 1209-1212 (S.D. Fla. 2006) (denying defendants' motion for summary judgment as to the motor carrier and taxicab exemptions, in a case in which he represented the plaintiffs); *Harley v. The Health Ctr. of Coconut Creek, Inc.*, 487 F. Supp. 2d 1344 (S.D. Fla. 2007) (denying defendant's motion for summary judgment in FMLA retaliation case); *Rozenblum v. Ocean Beach Properties*, 436 F. Supp. 2d 1351 (S.D. Fla. 2006) (granting summary judgment in his defendant client's favor in a FLSA overtime case); *Lane v. Capital Acquisitions and Management Co.*, 2007 WL 676019 (S.D. Fla. 2007) (denying defendant's motion for summary judgment in his plaintiff client's case); *Spencer v. Regional Acceptance Corp.*, 2006 WL 4590707 (S.D. Fla. 2006) (denying summary judgment on numerous-count complaint in FLSA, retaliation, and race discrimination case); *Ponce v. Cingular Wireless, L.L.C.*, 2005 WL 5454213 (S.D. Fla. 2005) (denying summary judgment in ethnic—Hispanic—discrimination case for his plaintiff client); *Mohamed v. Publix Super Markets, Inc.*, 2004 WL 5320631 (S.D. Fla. 2004) (denying summary judgment in ethnic discrimination case—Muslim—for his plaintiff client); *Gutescu v. Carey Int'l, Inc., et al.*, 2004 WL 5333762 (S.D. Fla. 2004) (denying summary judgment for gender discrimination and retaliation claims for his plaintiff client); *Gutescu v. Carey Int'l, Inc., et al.*, 2004 WL 5333763 (S.D. Fla. 2004) (denying defendants' motion for summary judgment for his plaintiff client's FLSA claims and extension of the statute of limitations); *Lamour v. Applied Card Sys., Inc.*, 2003 WL 2553716 (S.D. Fla. 2003) (denying summary judgment to defendant in his plaintiff client's sexual harassment and retaliation case); and *Fields v. Laboratory Corp. of Am.*, 2003 WL 25544257 (S.D. Fla. 2003) (denying defendant's motion for summary judgment in pregnancy discrimination case). *See also Sweat v.*

*Town of Davie*, Case No. 04-10003 (Broward Cty Cir. Ct., July, 2007) (granting summary judgment in favor of defense client on retaliation claim—not yet published).

Further, as defense counsel, undersigned counsel has persuaded numerous courts to grant motions to dismiss, dismissing his clients from the case. *Ali v. Prestige Window & Door Installation, L.L.C.*, 2009 WL 927947 (S.D. Fla., Apr. 6, 2009) (granting defense clients motion to dismiss case as frivolous); *Tesma v. Maddox-Joines, Inc.*, 254 F.R.D. 699 (S.D. Fla. 2008) (granting defense clients motion to dismiss case as frivolous, as plaintiff was caught forum shopping, bringing an admitted frivolous case, and made misrepresentations to the Court); *Casseus v. R & J of South Florida, Inc.*, 2007 WL 2376242 (S.D. Fla. 2007) (dismissing case for FLSA defense client because of improper joinder); *Brooks v. Jenne*, 2005 WL 5432453 (S.D. Fla. 2005) (dismissing defense client in § 1983 case); *Brooks v. Jenne*, 2005 WL 5488060 (S.D. Fla. 2005) (dismissing defense client in § 1983 case); *Tropical Aviation v. Broward County*, Case No. 04-60416 (Aug. 10, 2005) (dismissing case in docket entry 50); *Troxell v. C S C Enterprises, Inc.*, Case No. 04-21312 (S.D. Fla. Oct. 24, 2005) (dismissing case and sanctioning plaintiff's counsel in docket entry 33); *Smith v. Jenne*, 2004 WL 5375369 (S.D. Fla. 2004) (dismissing race and gender discrimination case), *Sweat v. Town of Davie*, 2004 WL 5354051 (Broward Cty. Cir. Ct. 2004) (dismissing sexual harassment claim).

Moreover, another important concept to the determination of an attorney's worth is an assessment of the attorney's skill. *Johnson*, 488 F.2d at 718. This criterion is addressed to the trial judge's assessment of the attorney based on his observation of "the attorney's work product, his preparation, and general ability before the court." *Id.* In making this assessment, the district court is to apply its expertise gained from the judge's career both as a lawyer and as a judge. *Id.* This criterion asks, initially, whether counsel was competent and experienced to do the job assigned, and

thereby determining whether he or she is deserving of the going commercial rate for lawyers engaged in litigation in federal court.

As it is for the jury to remember what the testimony presented was, it is for the district court to remember the performance of counsel. As stated by the Eleventh Circuit:

> Throughout, and particularly if litigation is begun, the word 'skill' incorporates the notions of organization and efficiency. An attorney of great skill organizes his thoughts, his work, and his presentation in a logical and orderly way without lost motion or false starts so that each move builds upon the last to the achievement of the goal. Organization means that discovery devices and motions are thought out and not utilized in a random or erratic way or for the mere purpose of going through established routines. Efficiency means doing well just what ought to be done and doing it in a minimum of time.

> The underpinning for these facts of legal skill is knowledge, knowledge of trial practice and knowledge of substantive law. A lawyer who has to educate himself generally in either or both of these two areas may ultimately be as effective as a specialist, but he has no right to expect to be reimbursed at the same rate as a lawyer who begins his preparation with the finer points raised by the particular case.

> The final attribute of legal skill is perhaps the one the general public thinks of first – persuasiveness. Some clients prevail only because of the compelling merit of their case and in spite of their attorney's efforts to communicate a position. In other cases, usually close ones, the better advocate may actually sway the outcome on occasions. In the usual case, both the merits and the advocacy control the outcome. The measure of good advocacy is that the client's best positions are advanced clearly, crisply and compellingly.

*Norman*, 836 F.2d at 1300-01.

Specialization, and the attendant economies of time that result, is a ground for awarding an hourly rate at the high end of the spectrum. For, as the court observed in *White v. Alabama*, 1996 Lexis 9347, *1 (N.D. Ala. 1996), a voting rights case in which the court found that the plaintiff's attorney's "expertise enabled them to prosecute th[e] case very efficiently,":

> attorneys with less knowledge and experience would have taken many more hours to pursue this litigation. Therefore, Agricola's and Jordan's 'efficiency justifies an hourly rate at the high end of the customary range.' *Gay Lesbian Bisexual Alliance v. Sessions*, [843 F. Supp. 1424 (M.D. Ala. 1996)]; *see also*

> *Coleman v. Cannon Oil Co.*, 911 F. Supp. 510, 515 (M.D. Ala. 1995) ("A lawyer already skilled in the area could demand a higher rate because he or she would be more knowledgeable and could work more efficiently"); *Dillard v. City of Elba*, 863 F. Supp. 1550, 1553 (M.D. Ala. 1993) (experienced attorneys prosecuted case in fewer hours than inexperienced attorneys would have); *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 744 F. Supp. 1061, 1071 (M.D. Ala. 1988) (attorney's "inexperience should be reflected in [lower] . . . hourly rate"), *aff'd*, 891 F.2d 842 (11th Cir. 1990).

*Id.* at *14-15.

In this case, Defendants' counsel exhibited outstanding skill, which is apparent from the filings in the docket that resulted in the grant of summary judgment in his client's favor. Further, defense counsel has specialized in this area, which is demonstrated by his published opinions. The Plaintiff vigorously prosecuted this cause of action on numerous grounds, as set forth above, which has caused the expenditure of fees.

### 2. Assessing a Reasonable Number of Hours

While the prevailing party need only submit evidence indicating what the hours worked were, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), in this case the hours that were actually worked and billed have been submitted. The Supreme Court has stated the following with respect to the assessment of whether the number of hours submitted is reasonable:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

*Id.* at 435. While this language applies to plaintiffs, it should also apply to defendants, and in this case, the Defendant was successful against the Plaintiff with respect to all causes of action brought by the Plaintiff, thus, all of defense counsel's fees should be recoverable. *Id.* at 434-35. The Eleventh Circuit has agreed with this rationale. *Norman*, 836 F.2d at 1302.

The attached documentation in the form of defense counsel's time records (Exhibit 4) should be more than enough evidence as to defense counsel's reasonable hours worked. The hours total 44.2 (as of April 15, 2009). Defense counsel submits that the number of hours is reasonable, particularly given the causes of action asserted and the litigation positions taken by the Plaintiff. The Plaintiff's main theory of this case was that the Defendant violated the Fair Labor Standards Act for overtime, and therefore, pursuant to *Hensley* and *Norman*, defense counsel is entitled to their entire fee, as they prevailed on all of these causes of action.

Attached hereto as Exhibit 5 is the Affidavit of Gloria North, which sets forth an expert opinion that the rates charged, the hours worked, and the lodestar are all reasonable under the circumstances of this case.

Finally, it is well settled that expended litigating attorneys fees is fully compensable. *Thompson v. Pharmacy Corp. of Am., Inc.*, 334 F.3d 1242, 1244-46 (11th Cir. 2003) (reversing district court's decision to deduct all attorney time attributed to efforts to recover attorneys fees as an abuse of discretion).

### 3. **The Lodestar**

The lodestar for all attorneys in this case (reasonable hourly rate) x (reasonable hours billed) is:

$$\$300.00/hr \times 50.4/hrs = \$15,990.00.$$

### 4. **Adjusting the Lodestar**

Having determined the lodestar by multiplying the reasonable hourly rate by a reasonable number of hours worked, the Court may then adjust the lodestar, as discussed above, upward or downward, to reflect a number of different factors, including, 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal services properly; 4)

the preclusion of other employment by the attorney due to the acceptance of this case; 5) time limitations by the client or the circumstances; and 6) the amount involved and the results obtained. *Manriquez v. Manuel Diaz Farms, Inc.*, 2002 WL 1050331, * 10 (S. D. Fla. 2002) (citing *Kay*, 176 F.3d at 1327); *Norman*, 836 F.2d at 1302. However, in this case, the Defendants do seek an increase in the lodestar.

### 5. Interest on the Fees

Defendants are entitled to interest on the attorneys fees and costs ultimately awarded in this matter from March 19, 2009, the date of the entry of this Court's Final Order. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1052 (11th Cir. 1994) (relying on *Georgia Ass'n of Retarded Citizens* in holding that "interest shall accrue on Paine Webber's taxable costs from the date the court entered final judgment in favor of Paine Webber on the merits of BankAtlantic's action, November 24, 1989"—BankAtlantic asserted that the cost interest should run from July 3, 1991, the day the district court adopted the magistrate's report and recommendation as to costs); *Georgia Ass'n of Retarded Citizens v. McDaniel*, 855 F.3d 794, 799 (11th Cir. 1988); *Chiever v. R.J. Schor, Inc.*, 2008 WL 4097795 (S.D. Fla. 2008); *Lane v. Capital Acquisitions Management and Co.*, 554 F. Supp. 2d 1345, 1355 (S.D. Fla. 2008) and *Navarro v. Broney Automotive Repairs, Inc.*, 2008 WL 2901440 (S.D. Fla. 2008). See also *Jenkins by Agyei v. Missouri*, 931 F.2d 1273 (8th Cir. 1991); *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir. 1983) (interest awarded on fees from date of original judgment); and *Finkelstein v. Bergua*, 804 F. Supp. 1235, 1240 (N.D. Cal. 1992). Accordingly, Defendant requests that this Court order that Defendant is entitled to interest accrued on Defendant's attorneys fees since March 19, 2009, the date of this Court Final Order.

## CONCLUSION

Based on the foregoing, Defendant and its counsel respectfully request that this Honorable Court award them $15,990.00 in attorney's fees.

## CERTIFICATE OF CONFERRAL

Undersigned counsel has conferred with counsel for the Plaintiff concerning the filing of this Motion, pursuant to Local Rule 7.1.A.3., but was not successful in resolving this Motion before it was filed. Undersigned counsel spoke at length with Michael O'Donnell from Findler & Findler, P.A., and told him the amount sought. The Plaintiffs object to the imposition of attorneys fees in this case. Undersigned counsel certifies, by executing this Motion, that he has fully reviewed the supporting time records and data underlying the incurred attorney work, and that the fees sought in this case are reasonable under the circumstances.

Respectfully submitted,

Glasser, Boreth & Kleppin
8751 W. Broward Blvd., Suite 105
Plantation, Florida 33324
Tel. (954) 424-1933
Fax. (954) 474-7405

By:   s/Chris Kleppin
      Chris Kleppin
      Fla. Bar No. 625485

## VERIFICATION

I, Chris Kleppin, Esq., as attorney for Plaintiffs, having first been duly sworn in accordance with law, do hereby depose and state that I have read the foregoing Motion for Attorney's Fees, and that the attorney's fees sought to be awarded against the Plaintiff and Findler & Findler, P.A. and Lissa Marie-Therese Jolivert-Dorsey herein, with further supporting documentation attached hereto, are true and correct to the best of my knowledge and information. I further assert that I have fully reviewed the time records and supporting data and that this Motion is well grounded in law and fact, and is justified.


CHRIS KLEPPIN


STATE OF FLORIDA

COUNTY OF BROWARD


Pursuant to 28 U.S.C. § 1746, Mr. Chris Kleppin is swearing under penalty of perjury that the arguments and the attorneys fees and costs sought in this Motion and the hours worked and hourly rates sought are true and correct and he verifies them as if sworn to under oath by a notary public.

Dated this 17th day of April, 2009.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 17, 2009, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Findler & Findler, P.A., 3 Harvard Circle, Suite 100, West Palm Beach, Florida 33409) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

Glasser, Boreth & Kleppin
Attorneys for Plaintiff
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel.  (954) 424-1933
Fax  (954) 474-7405
E-mail:  Glabor@aol.com


By __s/Chris Kleppin_____
          Chris Kleppin
          Fla. Bar No. 625485